TIALAVEA of Auto, Plaintiff

v.

AGA of Fagaitua, Defendant

No. 6-1946

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Vailaau" in Auto]

June 6, 1947

A. A. MORROW, *Chief Justice;* LIUFAU and NUA, *District Judges.*

DECISION

Heard at Fagatogo May 28, 1947.
Counsel for Tialavea, Barraco; for Aga, himself.

MORROW, *Chief Justice.*

Aga of Fagaitua offered certain land claimed by him to be the land Vailaau, situated in the village of Auto, for registration as the communal land of the Aga family. The offer was accompanied by a survey of land purporting to be Vailaau and marked Exhibit "A" in the records of the case. The area as shown on the survey is 7.853 acres. Tialavea objected to the proposed registration, claiming that the land was the communal land of the Tialavea family. Hence this litigation. Both prior and subsequent to the hearing of the case on May 28, 1947 the court viewed the premises, the parties to the litigation being present.

It appeared that Aga based his claim in part at least, upon the decision of the High Court dated Feb. 3, 1910 in the case of *Aga and Siliga, Plaintiffs v. Pele Savea and*

*Tialavea, Defendants,* No. 30-1907 in which case the court decreed that the land Vailaau was the property of Aga and Siliga. Siliga is a lesser matai in the Aga family.

The court has examined carefully the record in that case. It found in such record a plat of land purporting to be Vailaau with an area of 13 acres. The plat contains a notation indicating that the plat was made from a survey made on July 12, 1911, more than a year after the case was decided. The record contained no plat based upon a survey made prior to Feb. 3, 1910 when the decision in No. 30-1907 was handed down. The record in the case does contain a description by metes and bounds of the land Vailaau. It reads: "Vailaau. Commencing on the edge of bridge on Fagaiiua road thence N. 48° W. along stream distance 300 ft. thence S. 45° W. distance 268 ft. to a pig wall thence S. 40° E. distance 100 ft. to a cocoanut tree (x) thence S. 86° E. distance 375 ft. to the main road thence along main road N. 15° W. distance 93 ft. back to starting point. Containing 1.2 acres approx."

Since it has always been customary to file a plat at the time land is offered for registration (which offer must of necessity precede a hearing in court concerning the land) it would appear no plat being found in the record that no plat of Vailaau was filed. The court has had the land records searched. The land Vailaau was never registered as the property of Aga as a result of the decision of Feb. 3, 1910. This would indicate also that no plat was filed prior to Feb. 3, 1910. If a plat of Vailaau had been filed prior to that date the land would have been registered in the land records. The fact that a plat based upon a survey made July 12, 1911 was found in the record would indicate also that there was no plat filed prior to Feb. 3, 1910, for if there had been there would be no point in having a survey of Vailaau made on July 12, 1911 and then filing a plat based upon such survey.

The plat based upon the July 12, 1911 survey indicates that there was included in the surveyed land an area of 13 acres. The description by metes and bounds, as found in the record of No. 7-1907, indicates that Vailaau contains only 1.2 acres approximately. It would appear, therefore, that when the 1911 survey was made an area almost 11 times as large as the land Vailaau was included in such survey. The fact that no registration of Vailaau was made is consistent with the fact that the 1911 survey shows an area 11 times as large as Vailaau contains according to the record of its metes and bounds as found in the record of No. 30-1907.

When the survey of Aug. 4, 1945 (Edhibit "A") [sic] was made Aga tried to have the surveyor follow the old survey made on July 12, 1911. However, so much trouble developed between the Aga and Tialavea families because of this that Alec Narruhn, the surveyor, threatened to quit. The Tialavea people claimed that Aga was having their land back from the sea included in the survey. Nevertheless Narruhn did complete the survey but included in it only 7.853 acres which is the land offered for registration by Aga in the present case. Tialavea admitted that part of the land on the sea side was Aga property. At the hearing Tialavea claimed only the back part of the land.

Aga claimed all the land as shown in the Aug. 4, 1945 survey. He stated that prior to the war people from Fagaitua and Amaua planted their plantations on this land by permission of the Aga. During the war the land was occupied and used by the Marines for military purposes. Aga testified that after the Marines left in 1944 he stopped people from planting plantations and erecting their homes on the land. However, on its visits to the land the court observed that there were many plantations and one house on that part of the land claimed by Tialavea. The house was admittedly built by the Tialavea people and the evidence is quite clear that such plantations were put in by the Tialavea people, too.

240

Tologa who is about 70 years of age and the widow of Tialavea Valuvalu testified that the Tialavea people had had plantations on the disputed property from a time antedating the establishment of the government; that such plantations were put in without objection by the holder of the Aga title. While there is a conflict in the testimony as to the use and occupation of the property we think the weight of the testimony clearly shows that the part of the land back from the sea has been claimed, occupied and used by the Tialavea family or used by other people with their permission from a time antedating the establishment of the government, the period of the occupation by the Marines during the war excepted. And the testimony shows also that the eastern part of the surveyed land adjoining the highway has been claimed, occupied and used by the Aga people for many, many years (certainly more than twenty), or used by others with their permission, except during the period during the war when the Marines occupied such part. The court must and does give full recognition in this case to Samoan customs with respect to the acquisition of land titles.

In view of the testimony as a whole and what the court saw when it viewed the premises, the court is of the opinion, subject to the statement in the following paragraph that the eastern part of the land (as shown in the survey of Aug. 4, 1945) extending from the highway westward to a straight line passing through a point 25 feet west of the most westerly breadfruit tree (furthest from the highway and about 25 feet high) in the breadfruit plantation just west of the coconut plantation adjoining the highway, such straight line being drawn through such point and across the surveyed tract perpendicular to the particular western boundary which it meets, is the communal land of the Aga family, and that the remaining part of the land as surveyed

on Aug. 4, 1945 and shown in Exhibit "A" is the communal land of the Tialavea family.

However, if a re-survey of the land Vailaau as described by metes and bounds in the record of No. 30-1907 (such metes and bounds are set out on page 1 of this decision) should show that the western boundary of such re-surveyed land is westward of the straight line referred to in the next preceding paragraph, then the court is of the opinion that such part of such westward boundary as may lie within the Aug. 4, 1945 survey is the boundary line between the Aga and the Tialavea properties included in the Aug. 4, 1945 survey. The court upholds the decision in No. 30-1907.

The court ADJUDGES AND DECREES that the part of the land surveyed in Exhibit "A" (the survey of Aug. 4, 1945) lying east of the straight line referred to in the second paragraph next preceding or "such part of such westward boundary" referred to in the next preceding paragraph, whichever is the more westward, is the communal family land of Aga in his capacity as matai of the Aga family, while the remainder of such land included in Exhibit "A" is the communal family land of Tialavea in his capacity as matai of the Tialavea family.

The evidence showed that all the defendants are members of the Tialavea family.

Either, or both parties together, may have the necessary surveying done to establish the boundary line between the respective tracts. When such surveying has been done and the boundary line marked by the surveyor on Exhibit "A" in acccordance with this opinion, an opportunity will be afforded by the court to the parties to petition the court to order the land registered in accordance with law.

Inasmuch as Aga paid for having the survey of Aug. 4, 1945 made and Tialavea will receive much of the benefit

therefrom, the court assesses court costs of $37.50 against Tialavea, the same to be paid within 30 days.